DANNER, J.
*456 *702 Ralph Acosta, Jr., appeals aspects of his sentence for his convictions for committing a lewd or lascivious act on a child under the age *703 of 14 and for contacting a minor with the intent to commit a sexual offense. He contends that: (1) the sentence imposed for contacting a minor with the intent to commit a sexual offense should have been stayed pursuant to Penal Code section 654[1] because he harbored the same intent and objective for both crimes of conviction; (2) his trial counsel was constitutionally ineffective for failing to object to the sexual offender fines imposed by the trial court; and (3) the trial court lacked authority to issue a protective order forbidding him from contacting the sister of the named victim of his crimes.
In the unpublished portion of our decision, we conclude that the trial court correctly imposed sentences for each count of conviction without staying the punishment for either crime and had authority to issue a protective order barring Acosta from having contact with Jane Doe's sister, Jane Doe 2, under section 136.2, subdivision (i)(1).
In the published portion of our decision, we determine that Acosta has not demonstrated that his trial counsel was constitutionally ineffective for failing to request a hearing on Acosta's ability to pay the sexual offender fines. Nevertheless, we encourage trial courts to inquire into a defendant's financial circumstances when imposing a sexual offender fine, even in the absence of a request by the defendant.
I. FACTS AND PROCEDURAL BACKGROUND
Eight-year-old Jane Doe was a student at the elementary school where her mother, M.S.,[2] worked as a teacher. Jane Doe and her five-year-old sister were playing outside after school while M.S. worked in her classroom. The girls got tired and went back inside the school.
Jane Doe first saw Acosta, whom she did not know, standing outside the school office. Acosta told Jane Doe to " '[c]ome here,' " and she followed him into a small room near the school office. Acosta and Jane Doe then exited the room together, and Jane Doe followed Acosta down several hallways.
Acosta sat down on a bench and again told Jane Doe to " '[c]ome here.' " Acosta picked Jane Doe up by her torso, put her on his lap, and touched her vagina.[3] After Acosta touched Jane Doe's vagina, she stood up and got off his lap.
*704 Acosta went to a door leading outside to the school playground and gestured to Jane Doe to follow him. Jane Doe followed *457 Acosta to the door but then ran to her mother's classroom. Jane Doe next saw Acosta outside of her mother's classroom. Acosta again gestured to Jane Doe with his hand to go to him. Jane Doe refused by shaking her finger back and forth. Jane Doe's sister was present during all of Jane Doe's interactions with Acosta. Jane Doe's sister discussed details of the incident with her mother the following day. Acosta did not touch Jane Doe's sister.
An information charged Acosta with committing a lewd or lascivious act on a child under the age of 14 (§ 288, subd. (a) (count 1) ) and contacting a minor with the intent to commit a sexual offense (§ 288.3, subd. (a) (count 2) ). The information alleged in count 2 that Acosta contacted Jane Doe with the intent "to commit an offense specified in Penal Code Section 273a and/or 288." The information listed Jane Doe[4] as the sole victim and made no reference to her sister.
Acosta waived his right to a jury trial. Following a bench trial, the trial court found him guilty of both crimes. With respect to the offense of contacting a minor with the intent to commit a sexual offense, the court found "the People have proven their case beyond a reasonable doubt as to Count 2, Penal Code [section] 288.3 [, subdivision] (a), under the theory that the defendant intended to commit Penal Code [section] 288." The court stated that it did "not find sufficient evidence as to the alternate theory that [Acosta] intended to commit [a violation of section] 273a."
The trial court sentenced Acosta to eight years on count 1 for the violation of section 288, subdivision (a). The court imposed a concurrent sentence of four years on count 2 for the violation of section 288.3. The court stated, "I do believe that under [the] circumstances the 288.3 was really almost something that necessarily has to happen to commit the 288, [subdivision] (a). So that's a concurrent term." The prosecutor and defense counsel agreed that a concurrent term was appropriate for the section 288.3 conviction. Neither the court, the prosecutor, defense counsel, nor the probation officer raised section 654 's prohibition against double punishment regarding Acosta's crimes.
Among other fees and fines assessed during Acosta's sentencing, the trial court imposed two fines pursuant to section 290.3, the first for $300 and the second for $500, as well as related penalty assessments and administrative fees. The court made no explicit findings about Acosta's ability to pay the section 290.3 fines. Acosta did not ask for a hearing on his ability to pay these fines and did not object to their imposition.
*705 At the sentencing hearing, the prosecutor read a letter written by M.S. M.S. referenced the nightmares and fears that both her daughters continued to experience as a consequence of Acosta's actions. The prosecutor argued that "there really were two victims here ... he did this in front of two girls." The trial court asked the prosecutor whether he had listed both Jane Doe and her sister, whom the court referred to as Jane Doe 2, on the criminal protective order "given your argument at sentencing." The prosecutor responded that he had, and the court issued a 10-year criminal protective order listing "Jane Doe 1 & 2" as the protected persons. Acosta did not object to the inclusion of Jane Doe 2 in the protective order.
II. DISCUSSION
Acosta challenges three aspects of his sentence. He argues that section 654 precluded the imposition of an unstayed sentence *458 on count 2 in light of his sentence on count 1. He contends that his trial counsel was ineffective for failing to object to the sexual offender fines imposed pursuant to section 290.3. Finally, he states that the trial court lacked authority to issue a criminal protective order for Jane Doe's sister. We discuss each claim in turn.
A. Section 654 and Double Punishment**
B. Imposition of the Section 290.3 Sex Offender Fines
Acosta's convictions of section 288, subdivision (a) and section 288.3 triggered the imposition of sex offender fines for each count pursuant to section 290.3.[7] That section requires that a defendant convicted of those and other similar offenses "be punished by a fine of three hundred dollars ($300) upon the first conviction or a fine of five hundred dollars ($500) upon the second and each subsequent conviction, unless the court determines that the defendant does not have the ability to pay the fine." (§ 290.3, subd. (a).)
Pursuant to this provision, the trial court ordered fines of $300 and $500, plus penalty assessments and administrative fees, totaling $3,440. Acosta did not object at sentencing to the imposition of these fines; nor did he assert that he did not have the ability to pay them. As Acosta concedes, by failing to object to these fines at sentencing, he has waived any claim on appeal that the trial court improperly imposed them. ( *706 People v. Walz (2008) 160 Cal.App.4th 1364, 1369, 73 Cal.Rptr.3d 494.) However, Acosta maintains that we should remand his case to the trial court for a hearing on his ability to pay because his trial counsel was constitutionally ineffective for failing to object to the fines.
The test for ineffective assistance of counsel is a demanding one. It requires that a criminal defendant establish both that his counsel's performance was deficient and that he suffered prejudice. ( Strickland v. Washington (1984) 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.) Acosta bears the burden of demonstrating by a preponderance of the evidence that his counsel's performance fell below an objective standard of reasonableness. ( In re Thomas (2006) 37 Cal.4th 1249, 1257, 39 Cal.Rptr.3d 845, 129 P.3d 49.) Ineffective assistance of counsel is particularly difficult to demonstrate on direct appeal, where we are limited to the record from the trial court. "The appellate record ... rarely shows that the failure to object was the result of counsel's incompetence; generally, such claims are more appropriately litigated on habeas corpus, which allows for an evidentiary hearing where the reasons for defense counsel's actions or omissions can be explored." ( People v. Lopez (2008) 42 Cal.4th 960, 966, 71 Cal.Rptr.3d 253, 175 P.3d 4.) " 'Unless a defendant establishes to the contrary, we shall presume that "counsel's" performance fell within the wide range of professional competence.' " ( Ibid. ) " 'If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be rejected ... "unless there simply could be no satisfactory explanation." ' " ( Ibid. )
Acosta contends that "it is clearly evident" that he could not pay the fines and penalty assessments imposed under section 290.3, subdivision (a), and "[i]t cannot be said that counsel might have had some *459 tactical reason to refrain from objecting." Moreover, Acosta argues that he suffered prejudice from his counsel's failure to object because there is a "reasonable probability" that the trial court would not have imposed the fines had counsel objected.
We reject both contentions. We cannot say that, on the record before us, there is no satisfactory explanation for defense counsel's failure to object to the sexual offender fines. The probation report prepared for Acosta's sentencing stated that "[i]t is anticipated that defendant will have means to pay for any Court ordered fine or fee." Defense counsel may have determined that he would be unable to establish otherwise. Acosta was 41 years old at the time of sentencing. Although the probation report disclosed that Acosta had a limited work history, he had employment plans that he intended to pursue after serving his sentence. Acosta's criminal history was relatively minor. Trial counsel may have determined that Acosta would be able to work in the *707 future or would have access to assets or income not mentioned in the probation report sufficient to pay the sex offender fines. Further, the probation officer's conclusion that Acosta would have an ability to pay also significantly weakens Acosta's claim of prejudice, which assumes that the trial court would not have ordered the fines if defense counsel had objected to their imposition.
More generally, we recognize that a defense counsel's decision whether to object to the imposition of fines and fees can encompass factors beyond a defendant's financial circumstances, especially in serious cases involving potentially long prison sentences. Where, as here, the trial court has observed that "[t]he defendant brazenly breezed onto campus, sought out a child, and molested her in front of her sister," defense counsel may make a tactical decision that it is not in his or her client's interest to object to particular fines. We cannot speculate, given the absence of information before us, what led to defense counsel's decision not to object, but a myopic focus on Acosta's financial circumstances that neglects any of the other factors at play in a sentencing hearing may not provide an accurate picture of counsel's strategic calculus.
In light of these considerations and the reality that many felony defendants are indigent, it is the better practice for the trial court to independently inquire at sentencing about the defendant's ability to pay a sexual offender fine irrespective of whether the defendant-or his attorney-requests that the court do so. We recognize that the thicket of fines and fees that apply in a felony case and the varying legal standards that adhere to each complicate the process of pronouncing sentence. However, we urge trial courts to inquire sua sponte into a defendant's financial circumstances before imposing a sexual offender fine.
We emphasize that we do not hold that a trial court is obligated to inquire into a defendant's ability to pay a sex offender fine absent the defendant's request. (See People v. McMahan (1992) 3 Cal.App.4th 740, 749-750, 4 Cal.Rptr.2d 708 ( McMahan ) [reasoning "[i]t should be incumbent upon the defendant to affirmatively argue against application of the fine and demonstrate why it should not be imposed," in part because "the most knowledgeable person regarding the defendant's ability to pay would be the defendant himself"].) However, we note that the amount of the section 290.3 fine has increased threefold since the issuance of the McMahan decision. ( Id. at p. 749, 4 Cal.Rptr.2d 708.) With the addition of penalty assessments and administrative fees, the section 290.3 assessment alone can amount to thousands of dollars, and there are other mandatory *460 fines and fees levied in a typical felony sentencing. (See, e.g., §§ 1202.4, subd. (b); 1465.8.) Moreover, we are confident that trial *708 courts can inquire expeditiously into a defendant's financial circumstances such that the hearing need not be "significantly time-consuming." (Cf. McMahan , supra , at p. 749, 4 Cal.Rptr.2d 708.)
Nonetheless, Acosta has not demonstrated that his trial counsel was constitutionally deficient by failing to object to the trial court's imposition of sex offender fines. We reject his appeal on this ground.
C. The Criminal Protective Order for Jane Doe 2***
DISPOSITION
The judgment is affirmed.
WE CONCUR:
GREENWOOD, P.J.
GROVER, J.

All further statutory references are to the Penal Code unless otherwise specified.

We refer to Jane Doe's mother by her initials to protect Jane Doe's privacy interests. (See California Rules of Court, rule 8.90(b)(11).)

Jane Doe referred to her vagina as her "private part."

The information referred to Jane Doe as "Jane Doe #1."

See footnote *, ante .

The trial court correctly imposed a section 290.3 fine for each count of conviction. (People v. O'Neal (2004) 122 Cal.App.4th 817, 822, 19 Cal.Rptr.3d 202.)

See footnote *, ante .