Filed 10/21/20  P. v. Donovan CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAMES CHARLES DONOVAN,<br><br>    Defendant and Appellant. | F078247<br><br>(Super. Ct. No. BF169299A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John D. Oglesby, Judge.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez and Jennifer Oleksa, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Defendant James Charles Donovan was arrested and charged with molesting three children.  Following a trial by jury, he was convicted of two counts of committing a lewd or lascivious act with a child under the age of 14 years (Pen. Code, § 288, subd. (a); counts 1 & 3),[1] one count of engaging in oral copulation of a child who is 10 years old or younger (§ 288.7, subd. (b); count 2), and one misdemeanor count of annoying or molesting a child under the age of 18 years (§ 647.6, subd. (a)(1); count 4).[2]  The jury also found the multiple victims allegation attached to counts 1 and 3 true.  (§ 667.61, subd. (e)(4).)

The trial court sentenced defendant to an indeterminate term of 50 years to life in prison as follows:  two consecutive terms of 25 years to life on counts 1 and 3 under section 667.61, subdivision (j)(2), of the One Strike law; a term of 15 years to life on count 2, stayed under section 654; and a concurrent one-year term in county jail on count 4.  Relevant to defendant's claims, the trial court imposed a restitution fine of $300 under section 1202.4, subdivision (b)(1); a parole revocation restitution fine of $300 under section 1202.45, subdivision (a), stayed; a total court operations assessment of $160 under section 1465.8, subdivision (a)(1); a total court facilities assessment of $120 under Government Code section 70373, subdivision (a)(1); and a total sex offender fine of $2,000 under section 290.3, subdivision (a), with a total attached penalty assessment of $6,200.

On appeal, defendant requests that we reexamine the California Supreme Court's decision in *People v. Falsetta* (1999) 21 Cal.4th 903 (*Falsetta*) and find that the admission of his prior out-of-state sodomy conviction under Evidence Code section 1108

---

[1]    All further statutory references are to the Penal Code unless otherwise specified.

[2]    Count 4, which originally alleged a third violation of section 288, subdivision (a), was dismissed prior to trial under section 1385, and count 5 in the information was renumbered to count 4.

violated his rights to due process and equal protection, necessitating reversal. Defendant also advances four claims relating to the fines, fees and assessments imposed in this case, as follows: on count 1, the $500 sex offender fine imposed under section 290.3, subdivision (a), must be reduced to $300, resulting in the reduction of the accompanying penalty assessment from $1,550 to $930; on count 2, the $500 sex offender fine and accompanying $1,550 penalty assessment must be stricken because the sentence was stayed under section 654; in accordance with *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), he is entitled to relief from the fines, fees and assessments imposed until and unless the People demonstrate he has the ability to pay; and neither the oral pronouncement of judgment nor the abstract of judgment details the bases for the penalty assessments imposed, necessitating remand for correction.

The People dispute defendant's entitlement to any relief on his constitutional challenge to Evidence Code section 1108 or on his *Dueñas* claim. However, they concede that on count 1, defendant is entitled to reduction of the sex offender fine and penalty assessment; and on count 2, he is entitled to have the sex offender fine and penalty assessment stricken. They also concede that he is entitled to correction of the abstract of judgment with respect to listing the penalty assessments imposed, but they contend that we may order the correction on review without remand.

We find defendant's challenge to Evidence Code section 1108 foreclosed under settled law and decline his invitation to revisit the issue. We also find that defendant's failure to object to the imposition of the sex offender fine under section 290.3, subdivision (a), based on inability to pay forfeits his *Dueñas* claim in its entirety and we reject his derivative ineffective assistance of counsel claim. However, we agree with the parties that on count 1, the sex offender fine must be reduced from $500 to $300 and the penalty assessment must be reduced from $1,550 to $930; on count 2, the $500 sex offender fine and the $1,550 penalty assessment must be stricken given the section 654 stay of the sentence on count 2; and the abstract of judgment must be corrected to reflect

3.

the bases for each fine, fee and assessment imposed. We order these modifications and otherwise affirm the judgment.

## FACTUAL SUMMARY

The crimes in this case occurred in 2017. Defendant was then 19 years old and living with his mother, who babysat the victims periodically.

### I.     A.S. (Counts 2 and 3)

A.S.'s mother was engaged to defendant's brother. In May 2017, A.S., who was then six years old, was sitting on the living room couch in the house defendant shared with his mother. A.S. testified that defendant lifted her dress up, pulled her underwear down and touched her "tata," which she stated is the part she pees with. She also testified that he licked her "tata," and licked his finger and stuck it inside her "tata." He told her not to make any noise that his mother, J., would hear. A.S. pulled her underwear up and went to tell her "Grandma [J.]," who was watching television in the bedroom, what happened.

Later that day, A.S. told her mother what happened with defendant and her mother called the police. A sheriff's deputy collected the dress and underwear A.S. was wearing when defendant molested her.

### II.    A.H. (Count 1)

A.H. and defendant are cousins. Between late July and August 2017, defendant's mother babysat A.H., then nine years old, while A.H.'s mother worked; and defendant helped with the babysitting. A.H. testified that when she and defendant were in the bathroom together, he asked if he could see "down there" and pointed at her "private part," which she said was her vagina. A.H. said no and left the bathroom.

On another occasion when the two were in the bathroom, defendant rubbed A.H.'s vagina over her clothing in a circular motion with a purple, vibrating object that looked like a finger. He told her not to tell anyone. She felt uncomfortable and left the bathroom after telling him to stop.

4.

On a third occasion, A.H. was in the living room playing videogames with defendant and another cousin. Defendant said the winner would get ice cream and the loser had to get in his arms like a baby. A.H. was not good at video games and when she lost, defendant cradled her in his arms like a baby and rubbed her breasts over her clothing. She felt uncomfortable and moved out of his arms to the other couch.

A.H. eventually told her mother what happened, but did not do so right away.

## III.   M.S. (Count 4)

M.S. and defendant are also cousins, and she spent time with him at his house between January 2017 and his arrest in August 2017. M.S. was 10 years old at the time. She testified that while she was sitting next to defendant on the couch, he typed out a text message on his phone asking her if he could touch her butt. He showed her the text, but did not send it. She felt scared and said no. He erased the text and typed another one, asking if he could touch her middle, which she said is the part she goes to the bathroom with. After defendant showed M.S. the text, she said no and moved from the couch to a chair. She testified that she had met defendant only recently and felt really uncomfortable.

A few months later, defendant picked M.S. up while they were in the kitchen and cradled her so that his arm was touching her middle part, which she again said is the part she pees with. She told him to let her go and he said no.

M.S. did not tell her mother what happened right away because she was scared defendant might do something to her, but she did so eventually.

## IV.   Other Evidence

Deputy Costello with the Kern County Sheriff's Department interrogated defendant in early August 2017, at which point Costello did not yet know about the allegations concerning M.S. Defendant admitted rubbing A.H.'s vagina over her clothing with his hand and with what he said was a vibrating Xbox controller. He also stated he saw A.H.'s vagina up the leg of her shorts and was aroused by it. He denied he ever

5.

touched A.S., however. During interrogation, defendant wrote a letter to A.H.'s mother apologizing for breaking her trust and doing something "unforgiv[e]able" to A.H. He said he had not meant to, but was high and "gave into [his] urges." He asked A.H.'s mother to let A.H. know he was sorry and he expressed thankfulness he was caught.

The fabric crotch panel of the underwear A.S. was wearing on the day of the incident was analyzed for amylase, an enzyme found in biological fluids including saliva, and for DNA. The amylase tests were strongly positive, although not conclusive, for saliva and neither A.S. nor defendant could be ruled out as potential contributors to the mixed DNA profile obtained from the fabric panel. The major DNA contributor was male and for the stain swabbing analysis, the probability of a random person having the same DNA profile was one in 2.0 sextillion for the Black population, one in 4.1 quintillion for the Caucasian population, and one in 33 quintillion for the Hispanic population.[3] For the biological stain cutting analysis, the probability of a random person having the same DNA profile was one in 37 nonillion for the Black population, one in 20 octillion for the Caucasian population, and one in 36 octillion for the Hispanic population.

Finally, the trial court admitted evidence, in the form of certified records without accompanying testimony, that in 2012, defendant was convicted in the state of Utah of sodomizing a child under the age of 14.

## DISCUSSION

### I.    Constitutional Challenge to Evidence Code Section 1108

Pursuant to Evidence Code section 1108, the trial court admitted evidence that defendant suffered an out-of-state conviction for sodomizing a child under the age of 14. The evidence was confined to certified records and the jury was not informed of any factual details underlying the conviction. Defendant does not argue that the trial court

---

[3]    According to the probation report, defendant is Caucasian.

abused its discretion in admitting the evidence, and he concedes that Evidence Code section 1108 has long been upheld against constitutional challenges.[4]  However, he urges us to revisit the decision in *Falsetta*, *supra*, 21 Cal.4th 903 and find that admission of his prior sodomy conviction violated the due process and equal protection clauses.  We decline to do so.[5]

### A.    Background

"The general public policy on character or propensity evidence is that it is *not* admissible to prove conduct on a given occasion." (*People v. Cottone* (2013) 57 Cal.4th 269, 285; accord, *Falsetta*, *supra*, 21 Cal.4th at p. 911.)  This ensures "'that a defendant is tried upon the crime charged and is not tried upon an antisocial history.'" (*People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1176.)  The Legislature carved out an exception for sex offense cases, however, through its 1995 enactment of Evidence Code section 1108, which provides in relevant part:  "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." (Evid. Code, § 1108, subd. (a).)

Evidence Code section 1108 reflects the Legislature's recognition that sex offense cases have unique attributes.  (*Falsetta*, *supra*, 21 Cal.4th at p. 918.)  As the California Supreme Court explained, "'Our elected Legislature has determined that the policy considerations favoring the exclusion of evidence of uncharged sexual offenses are

---

[4]    "A court has broad discretion to exclude, as substantially more prejudicial than probative [under Evidence Code section 352], sexual offense evidence that meets the requirements for admission under Evidence Code section 1108, and its ruling in this regard is reviewed for abuse of discretion." (*People v. Merriman* (2014) 60 Cal.4th 1, 58.)

[5]    Given our determination that defendant's claim is foreclosed, we need not address the parties' dispute over whether defendant forfeited his constitutional claims by failing to object or whether the futility exception applies. (*People v. Merriman*, *supra*, 60 Cal.4th at p. 49, fn. 8; *People v. McCullough* (2013) 56 Cal.4th 589, 593; *In re Sheena K.* (2007) 40 Cal.4th 875, 880–881, 887–888, fn. 7.)

outweighed in criminal sexual offense cases by the policy considerations favoring the admission of such evidence.  The Legislature has determined the need for this evidence is "critical" given the serious and secretive nature of sex crimes and the often resulting credibility contest at trial.'"  (*Id.* at p. 911.)  Thus, Evidence Code section 1108 reflects the Legislature's conclusion that evidence of this type is uniquely probative of a defendant's propensity to commit sex offenses and important policy considerations outweigh the general prohibition against propensity evidence.  (*People v. Cottone*, *supra*, 57 Cal.4th at pp. 285–286; *Falsetta*, *supra*, at pp. 911–912.)

### B.     Due Process

More than two decades ago, the Court of Appeal rejected a due process challenge to Evidence Code section 1108 in *People v. Fitch* (1997) 55 Cal.App.4th 172, 184–185 (*Fitch*).  The California Supreme Court subsequently agreed and, relying in part on *Fitch*, upheld the statute against a due process challenge.  (*Falsetta*, *supra*, 21 Cal.4th at pp. 917–918, 922.)  The high court stated, "To prevail on such a constitutional claim, [the] defendant must carry a heavy burden.  The courts will presume a statute is constitutional unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity.  [Citations.]  In the due process context, [the] defendant must show that [Evidence Code] section 1108 offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  [Citations.]  The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair."  (*Id.* at pp. 912–913.)  The court concluded that because trial courts have discretion to exclude propensity evidence under Evidence Code section 352, Evidence Code section 1108 does not violate the due process clause.  (*Falsetta*, *supra*, at pp. 916–917.)

The California Supreme Court has repeatedly declined to revisit its holding in *Falsetta*.  (E.g., *People v. Molano* (2019) 7 Cal.5th 620, 664; *People v. Deveggio and*

*Michaud* (2018) 4 Cal.5th 790, 827; *People v. Merriman*, *supra*, 60 Cal.4th at pp. 46–47; *People v. Loy* (2011) 52 Cal.4th 46, 60–61.) "'Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court.'" (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 197–198, quoting *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Accordingly, we reject defendant's due process challenge to Evidence Code section 1108.

### C. Equal Protection

As defendant acknowledges, Courts of Appeal have also rejected equal protection challenges to Evidence Code section 1108 and Evidence Code section 1109, a companion statute governing other acts of domestic violence. (*Fitch*, *supra*, 55 Cal.App.4th at pp. 181–182, fn. 3, 184–185; accord, *People v. Brown* (2011) 192 Cal.App.4th 1222, 1233, fn. 14 [Evid. Code, § 1109]; *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1310–1313 [Evid. Code, § 1109].) In *Fitch*, the court applied rational-basis scrutiny to section 1108, stating, "An equal protection challenge to a statute that creates two classifications of accused or convicted defendants, without implicating a constitutional right, is subject to a rational-basis analysis." (*Fitch*, *supra*, at p. 184.) In enacting Evidence Code section 1108, "[t]he Legislature determined that the nature of sex offenses, both their seriousness and their secretive commission which results in trials that are primarily credibility contests, justified the admission of relevant evidence of a defendant's commission of other sex offenses. This reasoning provides a rational basis for the law." (*Fitch*, *supra*, at p. 184; accord, *People v. Waples* (2000) 79 Cal.App.4th 1389, 1394–1395.)

Subsequently in *People v. Jennings*, the Court of Appeal explained, "Neither the federal nor the state constitution bars a legislature from distinguishing among criminal offenses in establishing rules for the admission of evidence; nor does equal protection require that acts or things which are different in fact be treated in law as though they were

9.

the same.  The equal protection clause simply requires that, 'in defining a class subject to legislation, the distinctions that are drawn have "some relevance to the purpose for which the classification is made."'  [Citation.]  Absolute equality is not required; the Constitution permits lines to be drawn."  (*People v. Jennings*, *supra*, 81 Cal.App.4th at p. 1311; see *People v. Valencia* (2017) 3 Cal.5th 347, 376.)

As with his due process challenge, defendant advances no persuasive basis for departing from settled caselaw.  Therefore, we also reject his equal protection claim.

## II.     Error in Imposing Sex Offender Fine and Attached Penalty Assessments

### A.     Background

Section 290.3, subdivision (a), provides, "Every person who is convicted of any offense specified in subdivision (c) of Section 290 shall, in addition to any imprisonment or fine, or both, imposed for commission of the underlying offense, be punished by a fine of three hundred dollars ($300) upon the first conviction or a fine of five hundred dollars ($500) upon the second and each subsequent conviction, unless the court determines that the defendant does not have the ability to pay the fine."  In this case, as to each of counts 1 through 4, the trial court imposed a $500 fine under section 290.3, subdivision (a), and a total penalty assessment of $1,550, resulting in total sex offender fines of $2,000 and total attached penalty assessments of $6,200.[6]

---

[6]     The penalty assessment referred to herein is comprised of the following seven assessments, surcharge and penalties:  "(1) a 100 percent state penalty assessment (§ 1464, subd. (a)(1)); (2) a 20 percent state surcharge (§ 1465.7); (3) a state court construction penalty of up to 50 percent (Gov. Code, § 70372); (4) a 70 percent additional penalty (Gov. Code, § 76000, subd. (a)(1)); (5) a 20 percent additional penalty if authorized by the county board of supervisors for emergency medical services (Gov. Code, § 76000.5, subd. (a)(1)); (6) a 10 percent additional penalty '"[f]or the purpose of implementing the DNA Fingerprint, Unsolved Crime and Innocence Protection Act"' (Gov. Code, § 76104.6, subd. (a)(1)); and (7) a 10 percent additional state-only penalty for the purpose of operating forensic laboratories under the same act (Gov. Code, § 76104.7)."  (*People v. Hamed* (2013) 221 Cal.App.4th 928, 935; accord, *People v. Johnson* (2015) 234 Cal.App.4th 1432, 1457–1458.)

The parties agree that the trial court erred when it imposed a $500 fine rather than a $300 fine for defendant's first conviction in count 1, and that the corresponding penalty assessment must also be reduced from $1,500 to $930. The parties also agree that the trial court erred when it imposed a $500 fine and a $1,550 penalty assessment on count 2 because the sentence on that count was stayed under section 654.

## B. Count 1

Although defendant did not object to the sentence in the trial court, "a sentence is generally 'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case." (*People v. Scott* (1994) 9 Cal.4th 331, 354.) Errors of this type are "'clear and correctable' independent of any factual issues presented by the record at sentencing." (*Ibid.*, citing *People v. Welch* (1993) 5 Cal.4th 228, 235.) Therefore, "[a] claim that a sentence is unauthorized … may be raised for the first time on appeal, and is subject to judicial correction whenever the error comes to the attention of the reviewing court." (*People v. Dotson* (1997) 16 Cal.4th 547, 554, fn. 6, citing *People v. Scott*, *supra*, at p. 354.)

We accept the People's concession that the fine imposed on count 1 pursuant to section 290.3, subdivision (a), should have been $300 rather than $500. This correction necessitates the reduction of the attached penalty assessment from $1,550 to $930 as follows: $300 (§ 1464, subd. (a)); $210 (Gov. Code, § 76000, subd. (a)); $30 (Gov. Code, § 76104.6, subd. (a)); $120 Gov. Code, § 76104.7, subd. (a)); $150 (Gov. Code, § 70372, subd. (a)); $60 (Gov. Code, § 76000.5, subd. (a)); and $60 (§ 1465.7, subd. (a)).[7] Accordingly, as to count 1, we modify the sex offender fine from $500 to $300 and the attached penalty assessment from $1,550 to $930.

---

[7]    As addressed in part IV. of the Discussion, the trial court relied on the penalty assessment breakdown in the probation report and did not recite that breakdown during the oral pronouncement of judgment. To avoid creating any added confusion given our conclusion that the abstract of judgment must be amended to set forth the penalty assessments, we address the penalty assessment components in the order summarized in the probation report. Additionally,

### C.     Count 2

"'[S]ection 654 prohibits the use of a conviction for any punitive purpose if the sentence on that conviction is stayed.'" (*People v. Sharret* (2011) 191 Cal.App.4th 859, 865 (*Sharret*), quoting *People v. Pearson* (1986) 42 Cal.3d 351, 361, disapproved on another ground in *People v. Vidana* (2016) 1 Cal.5th 632, 651–652; accord, *People v. Le* (2006) 136 Cal.App.4th 925, 934.)[8]  Therefore, we also accept the People's concession that the punitive fine imposed on count 2 under section 290.3, subdivision (a), and the attached penalty assessment should not have been imposed given that the sentence on count 2 was stayed under section 654.  (*People v. Gonzales* (2017) 16 Cal.App.5th 494, 504, citing *Sharret*, *supra*, at p. 865.)  The $500 fine and $1,550 penalty assessment attached to count 2 are stricken.  (*Gonzales*, *supra*, at p. 504.)

## III.     *Dueñas* Claim

### A.     Claim Forfeited

As previously stated, the trial court imposed a restitution fine of $300 under section 1202.4, subdivision (b)(1); a parole revocation restitution fine of $300 under section 1202.45, subdivision (a), stayed; a total court operations assessment of $160 under section 1465.8, subdivision (a)(1); a total court facilities assessment of $120 under Government Code section 70373, subdivision (a)(1); and a total sex offender fine of $2,000 under section 290.3, subdivision (a), with an attached penalty assessment totaling

---

we point out that with respect to the imposition of a $500 sex offender fine, the total penalty assessment of $1,550 set forth in the probation report is correct.  However, the probation report incorrectly lists the 20 percent penalty assessment under Government Code section 76000.5, subdivision (a), as $60 rather than $100; $60 is the correct amount for the $300 fine in count 1.

[8]     Section 654, subdivision (a), provides:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.  An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

$6,200.[9] Relying on the Court of Appeal's decision in *Dueñas*, which was issued while this appeal was pending, defendant claims that he is entitled to relief from the fees, fines and assessments imposed by the trial court until and unless the People prove he has the ability to pay them. Alternatively, if we conclude he forfeited his claim, he argues that trial counsel's failure to object constituted ineffective assistance of counsel. The People contend that defendant forfeited his claim by failing to object and they dispute his entitlement to any relief on the merits.

In this case, defendant did not have a statutory right to object to the restitution fine based on inability to pay because the trial court imposed the minimum fine of $300. (§ 1202.4, subds. (b)(1), (c), (d).)[10] However, section 290.3, subdivision (a), provides, "Every person who is convicted of any offense specified in subdivision (c) of Section 290 shall, in addition to any imprisonment or fine, or both, imposed for commission of the underlying offense, be punished by a fine of three hundred dollars ($300) upon the first conviction or a fine of five hundred dollars ($500) upon the second and each subsequent conviction, *unless the court determines that the defendant does not have the ability to pay the fine*." (Italics added.) Thus, defendant had a statutory right to object to imposition of the sex offender fine based on inability to pay, but he did not do so.

Defendant acknowledges the decision in *People v. McMahan*, in which this court rejected the defendant's claim that "the court had a duty to determine he had the ability to pay the [sex offender] fine before its imposition." (*People v. McMahan* (1992) 3 Cal.App.4th 740, 748 (*McMahan*).) The *McMahan* court interpreted section 290.3 "to place the burden upon the defendant to timely raise the issue [of ability to pay]"

---

[9] Following the modifications to counts 1 and 2 discussed in the preceding section, the total sex offender fine is reduced to $1,300 and the total penalty assessment is reduced to $4,030.

[10] Section 1202.4, subdivision (c), provides, in relevant part, "Inability to pay may be considered only in increasing the amount of the restitution fine in excess of the minimum fine ...."

(*McMahan*, *supra*, at p. 749), and concluded that by failing to object or present evidence he lacked the ability to pay, the defendant forfeited appellate review (*id.* at p. 750). Defendant contends, however, that *McMahan* was recently questioned in *People v. Acosta* (2018) 28 Cal.App.5th 701 (*Acosta*). We are unpersuaded by this characterization of *Acosta*.

The defendant in *Acosta* conceded that his failure to object to the imposition of the sex offender fine under section 290.3, subdivision (a), forfeited an appellate challenge, but he contended that trial counsel's failure to object constituted ineffective assistance of counsel. (*Acosta*, *supra*, 28 Cal.App.5th at pp. 705–706.) In rejecting the claim, the court opined that "it is the better practice for the trial court to independently inquire at sentencing about the defendant's ability to pay a sexual offender fine irrespective of whether the defendant—or his attorney—requests that the court do so[]" (*id.* at p. 707), and it "urge[d] trial courts to inquire sua sponte into a defendant's financial circumstances before imposing a sexual offender fine[]" (*ibid.*). However, the court stated, "We emphasize that we do not hold that a trial court is obligated to inquire into a defendant's ability to pay a sex offender fine absent the defendant's request." (*Ibid.*) As such, the court's comments regarding what it viewed as a better, or suggested, practice by trial courts are dicta.

We conclude that defendant's failure to object to the imposition of the sex offender fine under section 290.3, subdivision (a), also forfeits appellate review of his *Dueñas* claim. (*Acosta*, *supra*, 28 Cal.App.5th at pp. 705–706; *McMahan* , *supra*, 3 Cal.App.4th at p. 750; see *People v. Taylor* (2019) 43 Cal.App.5th 390, 399–400 [*Dueñas* challenge to maximum restitution fine imposed under § 1202.4 forfeited because the defendant could have but did not object based on inability to pay]; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033 [same]; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153–1154 [same].) As we have recognized, ability to pay is not a factor in imposing the minimum restitution fine of $300 under section 1202.4, subdivision (b)(1),

and we recognize that imposition of court operations and facilities assessments under Penal Code section 1465.8 and Government Code section 70373 is mandatory irrespective of ability to pay. However, we agree with the Court of Appeal in *People v. Gutierrez*: "As a practical matter, if [defendant] chose not to object to a [total sex offender fine of $2,000, which gave rise to an attached penalty assessment totaling $6,200,] based on an inability to pay, he surely would not complain on similar grounds regarding an additional $[580] in [fines and] fees." (*People v. Gutierrez, supra*, at p. 1033.)

We further recognize that in *People v. Taylor*, the Court of Appeal applied the forfeiture doctrine where the defendant failed to object to the imposition of the maximum restitution fine, but declined to do so with respect to the court operations and facilities fees, reasoning that the defendant's failure to object to the restitution fine despite a statutory right to do so may have been based on reasons unrelated to his ability to pay. (*People v. Taylor, supra*, 43 Cal.5th at pp. 400–401.) We are unpersuaded on that point, however, and conclude that in this case, defendant forfeited his ability-to-pay claim under *Dueñas* in its entirety by failing to object to the total $2,000 fine imposed under section 290.3, subdivision (a). (*Acosta, supra*, 28 Cal.App.5th at pp. 705–706.)

## B.     Ineffective Assistance of Counsel

Turning to defendant's related claim that counsel was ineffective by failing to object, "'[a] defendant claiming a violation of the federal constitutional right to effective assistance of counsel must satisfy a two-pronged showing: that counsel's performance was deficient, and that the defendant was prejudiced, that is, there is a reasonable probability the outcome would have been different were it not for the deficient performance.'" (*People v. Woodruff* (2018) 5 Cal.5th 697, 736, quoting *People v. Alexander* (2010) 49 Cal.4th 846, 888; accord, *Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Mickel* (2016) 2 Cal.5th 181, 198.) To establish deficient performance, defendant must show that counsel's performance "fell below an objective

15.

standard of reasonableness under prevailing professional norms." (*People v. Mai* (2013) 57 Cal.4th 986, 1009; accord, *Strickland v. Washington*, *supra*, at pp. 687–688; *People v. Mickel*, *supra*, at p. 198.)

"On appeal, we do not second-guess trial counsel's reasonable tactical decisions." (*People v. Lucas* (2014) 60 Cal.4th 153, 278, disapproved on another ground in *People v. Romero and Self* (2015) 62 Cal.4th 1, 53–54, fn. 19.) "[A] defendant's burden [is] 'difficult to carry on direct appeal,' as a reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had ""'no rational tactical purpose'"" for an action or omission." (*People v. Mickel*, *supra*, 2 Cal.5th at p. 198, quoting *People v. Lucas* (1995) 12 Cal.4th 415, 437.)

The recent decision in *Dueñas* marked a significant shift in the law, but that is not so with regard to the sex offender fine. To the contrary, it had long been established that a defendant bears the burden of raising the issue of ability to pay the sex offender fine imposed under section 290.3, subdivision (a). (*McMahan*, *supra*, 3 Cal.App.4th at p. 750.) Although defendant argues that trial counsel was ineffective by failing to object, counsel is presumed competent. (*Strickland v. Washington*, *supra*, 466 U.S. at p. 690.) As the court stated in *Acosta*, "a defense counsel's decision whether to object to the imposition of fines and fees can encompass factors beyond a defendant's financial circumstances, especially in serious cases involving potentially long prison sentences." (*Acosta*, *supra*, 28 Cal.App.5th at p. 707.) "We cannot speculate, given the absence of information before us, what led to defense counsel's decision not to object, but a myopic focus on [the defendant's] financial circumstances that neglects any of the other factors at play in a sentencing hearing may not provide an accurate picture of counsel's strategic calculus." (*Ibid.*)

In this case, the fact that defendant was sentenced to two consecutive terms of 25 years to life may well have informed trial counsel's tactical decision not to object to the sex offender fines based on inability to pay. Regardless, this record does not

affirmatively demonstrate "that counsel had ""no rational tactical purpose"" for [the] … omission." (*People v. Mickel*, *supra*, 2 Cal.5th at p. 198.)  This conclusion forecloses defendant's claim on direct appeal.  Moreover, although defendant acknowledges he bears the burden of demonstrating prejudice on appeal and he advances a bare claim of prejudice, he makes no showing that counsel's failure to object resulted in prejudice in this case.  As such, defendant satisfies neither prong of the inquiry.

## IV.    Correction to Abstract of Judgment

Finally, at the sentencing hearing, the trial court imposed the penalty assessments attached to the section 290.3 sex offender fines as detailed in the probation report, and the parties stipulated that the court did not need to recite the breakdown of those assessments.[11]  The minute order does not include the penalty assessment breakdown, and the abstract of judgment does not set forth any fines, fees or assessments except for the court operations assessment of $160 under section 1465.8 and the court facilities assessment of $120 under Government Code section 70373.

Defendant acknowledges the parties relieved the trial court from reciting the breakdown of the penalty assessments by stipulation, but he claims the trial court's failure to do so was error and requires remand for correction.  The People argue that defendant waived or invited the error by consenting to the pronouncement of judgment, but state that to the extent the abstract of judgment requires correction, we may order the correction.

A trial court's failure "to specify the statutory bases for the fine, fees, and penalty assessments imposed" is legal error (*People v. Hartley* (2016) 248 Cal.App.4th 620, 636, fn. omitted (*Hartley*); accord, *People v. High* (2004) 119 Cal.App.4th 1192, 1200), and may be reviewed on appeal even in the absence of an objection (*Hartley*, *supra*, at p. 637;

---

[11]    As previously noted, the total penalty assessment of $1,550 imposed for counts 3 and 4 is correctly set forth in the probation report, but the report incorrectly lists the penalty assessment under Government Code section 76000.5, subdivision (a)(1), as $60 rather than $100.

17.

accord, *People v. Smith* (2001) 24 Cal.4th 849, 852).  There are "several ways for a trial court to perform this duty.  'A trial court could recite the amount and statutory basis for any base fine and the amounts and statutory bases for any penalty assessments on the record ….  [Citation.]  Or, in cases where the amounts and statutory bases for the penalty assessments have been set forth in a probation report, a sentencing memorandum, or some other writing, the court could state the amount and statutory basis for the base fine and make a shorthand reference in its oral pronouncement to "penalty assessments as set forth in the" probation report, memorandum, or writing ….'" (*Hartley*, *supra*, at pp. 636–637, quoting *People v. Hamed*, *supra*, 221 Cal.App.4th at pp. 939–940.)

In this case, as previously stated, the trial court's oral pronouncement of judgment incorporated by reference the breakdown of the penalty assessments listed in the probation report.  This procedure, to which the parties stipulated, is satisfactory with respect to the oral pronouncement of judgment and, therefore, remand of the matter is unnecessary. (*Hartley*, *supra*, 248 Cal.App.4th at pp. 636–637; *People v. Hamed*, *supra*, 221 Cal.App.4th at pp. 939–940; *People v. Voit* (2011) 200 Cal.App.4th 1353, 1373; *Sharret*, *supra*, 191 Cal.App.4th at p. 864.)

However, "[a]ll fines and fees must be set forth in the abstract of judgment. [Citations.]  The abstract of judgment form … provides a number of lines for 'other' financial obligations in addition to those delineated with statutory references on the preprinted form.  If the abstract does not specify the amount of each fine, the Department of Corrections cannot fulfill its statutory duty to collect and forward deductions from prisoner wages to the appropriate agency. [Citation.]  At a minimum, the inclusion of all fines and fees in the abstract may assist state and local agencies in their collection efforts. (Pen. Code, § 1205, subd. (c).)  Thus, even where the Department of Corrections has no statutory obligation to collect a particular fee, … the fee must be included in the abstract of judgment." (*People v. High*, *supra*, 119 Cal.App.4th at p. 1200.)  In *Sharret*, the Court of Appeal recognized that "trial courts frequently orally impose the penalties and

18.

surcharge … by a shorthand reference to 'penalty assessments.' The responsibility then falls to the trial court clerk to specify the penalties and surcharge in appropriate amounts in the minutes and, more importantly, the abstract of judgment." (*Sharret*, *supra*, 191 Cal.App.4th at p. 864.) The court concluded "[t]his is an acceptable practice." (*Ibid.*)

As discussed, as to count 1, the sex offender fine imposed under section 290.3, subdivision (a), is reduced to $300 and the attached penalty assessment is reduced to a total of $930, and as to count 2, the sex offender fine of $500 imposed under section 290.3, subdivision (a), and the attached penalty assessment totaling $1,550 are stricken. The trial court shall issue an amended minute order reflecting imposition on count 1 of a sex offender fine of $300 (§ 290.3, subd. (a)) and penalty assessments of $930 as follows: $300 (§ 1464, subd. (a)); $210 (Gov. Code, § 76000, subd. (a)); $30 (Gov. Code, § 76104.6, subd. (a)); $120 (Gov. Code, § 76104.7, subd. (a)); $150 (Gov. Code, § 70372, subd. (a)); $60 (Gov. Code, § 76000.5, subd. (a)); and $60 (§ 1465.7, subd. (a)). (*Sharret*, *supra*, 191 Cal.App.4th at p. 864.) The amended minute order shall further reflect as to each of counts 3 and 4 the imposition of a sex offender fine of $500 (§ 290.3, subd. (a)) and penalty assessments of $1,550 as follows: $500 (§ 1464, subd. (a)); $350 (Gov. Code, § 76000, subd. (a)); $50 (Gov. Code, § 76104.6, subd. (a)); $200 (Gov. Code, § 76104.7, subd. (a)); $250 (Gov. Code, § 70372, subd. (a)); $100 (Gov. Code, § 76000.5, subd. (a)); and $100 (§ 1465.7, subd. (a)). (*Sharret*, *supra*, at p. 864.) The trial court shall issue an amended abstract of judgment setting forth in detail each fine, fee and penalty assessment, including the restitution fine of $300 (§ 1202.4, subd. (b)(1)), and the parole revocation restitution fine of $300 (§ 1202.45, subd. (a)), which were also omitted from the original abstract of judgment.

## DISPOSITION

The judgment is modified as follows: on count 1, the sex offender fine imposed under section 290.3, subdivision (a), is reduced from $500 to $300 and the attached penalty assessment is reduced from $1,550 to $930; and on count 2, the sex offender fine

19.

of $500 imposed under section 290.3, subdivision (a), and attached penalty assessment of $1,550 are stricken given the stay of sentence under section 654.  The trial court shall issue an amended minute order and an amended abstract of judgment reflecting these modifications and setting forth in detail each fine, fee and assessment, as addressed in part IV. of the Discussion.

Except as modified, the judgment is affirmed.


MEEHAN, J.

WE CONCUR:


POOCHIGIAN, Acting P.J.


SMITH, J.

20.