Filed 1/12/21  P. v. Le CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H047423 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1759938) |
| v. | |
| SON THANH LE, | |
| Defendant and Appellant. | |

After pleading no contest to two sex-related crimes, appellant Son Thanh Le filed a motion under Penal Code section 1018 to withdraw his plea.  Le asserted that his plea was unknowing because his counsel had not adequately informed him of the immigration consequences of his convictions.  The trial court denied the motion.  It found Le had been advised of the possible immigration implications of his no contest plea prior to its entry and had not established by clear and convincing evidence that he would have made a different decision if he had had more time to consider its immigration ramifications.

On appeal, Le argues that the trial court abused its discretion by denying his motion.  Further, Le contends that his defense counsel provided prejudicially ineffective assistance by failing to give him adequate time in which to consider the immigration consequences of the proposed plea agreement.  For the reasons set forth below, we reject Le's claims and affirm the judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

Between January 2012 and March 2017, Le committed multiple sexual offenses against his niece, who was then a minor.[1]

In December 2017, the Santa Clara County County District Attorney filed an information charging Le with one count of oral copulation or sexual penetration of a child 10 years of age or younger, in violation of Penal Code section 288.7, subdivision (b)[2] (count one), and four counts of lewd or lascivious act on a child by force, violence, duress, menace, or fear, in violation of section 288, subdivision (b)(1) (hereafter section 288(b)(1)) (counts two through five). The trial court appointed the public defender to represent Le.

Le was tried before a jury in October and November 2018. On November 14, 2018, the trial court declared a mistrial after the jurors were unable to reach a unanimous verdict. Following the mistrial, on November 27, 2018, Le pleaded no contest pursuant to a written plea agreement to two violations of section 288(b)(1) before the same judge who had presided over his earlier trial. The plea agreement provided that Le would serve five years in prison on each count, to run concurrently with each other, and would waive his entitlement to his pre-sentencing custody credits. In exchange, the information's remaining counts would be dismissed.

In his written plea agreement, Le initialed a box next to a section entitled "immigration consequences" (capitalization omitted), that stated "I understand if I am not a citizen of the United States, my plea of guilty or no contest in this case may result in my deportation (removal), exclusion from admission (re-entry) to the United States, or denial of naturalization and amnesty pursuant to the laws of the United States. My attorney has talked to me about this, and I am entering my plea understanding these consequences." Le also initialed a statement "I have read this form (or this form was read to me) and I

---

[1] Because Le was convicted by plea, we take this fact from his probation report.
[2] Unspecified statutory references are to the Penal Code.

2

have initialed the items that apply to my case. I am indicating I understand and agree with what is stated in each item I have initialed. I freely and voluntarily plead: [¶] . . . no contest" (some capitalization omitted).

During the change-of-plea hearing, in response to questions from the trial court, Le stated that he had initialed and signed the plea agreement; he understood his rights as described in the plea agreement and agreed to give them up. The trial court asked Le, "Do you understand the consequences of your pleas today as they are described on this form, as they have been discussed here in court and including any immigration consequences?" Le replied "Yes" and stated that he did not have any questions about the plea agreement. Le did not ask the trial court for more time to consider the potential immigration consequences of his plea. The trial court asked Le's counsel whether she had "fully discussed with [her] client his constitutional rights and the consequences of his pleas today including any immigration consequences?" Le's counsel responded that she had.

Le then pleaded no contest to two counts of section 288(b)(1), and the trial court accepted his plea. The trial court set a sentencing hearing for December 24, 2018.

On December 24, 2018, Le appeared with private counsel. The trial court relieved the public defender from its representation of Le and set a further hearing date. On February 13, 2019, Le filed a motion to withdraw his plea.

A. *Motion to Withdraw the Plea*

In the motion to withdraw his plea and the accompanying declaration, Le asserted that his former attorney had not explained to him the immigration consequences of his plea, and he believed "he had no alternative but to accept the plea bargain." Le asserted there was good cause for the trial court to allow Le to withdraw his no contest plea because he did not have sufficient opportunity to consider the serious immigration consequences of his plea, and his attorney did not advise him of the adverse immigration consequences of his convictions.

The district attorney opposed Le's motion, contending Le had not produced clear and convincing evidence in support of his motion to withdraw his plea.

B. *Testimony at the Hearing on the Motion to Withdraw the Plea*

On May 2, 2019, the trial court held a hearing on Le's motion to withdraw his plea at which Le and his former attorney testified. Le testified that, when he entered his no contest plea on November 27, 2018, he was represented by an attorney from the public defender's office (public defender). Prior to that date, he had never had a conversation with his attorney about his immigration status.

Le stated that the public defender "[j]ust briefly" went over the plea agreement form with him. She did not review with him the constitutional rights that he would be waiving or his possible defenses. When they got to the immigration portion of the waiver form, his attorney asked him " ' You are a U.S. citizen, right?' ", and Le said " 'no.' " Le testified "And I was just told that I would have to get an immigration attorney." That was the first time the public defender asked him if he was a U.S. citizen. Le stated he did not have an understanding of the immigration consequences of the convictions at the time he entered his no contest plea.

At the hearing on the motion to withdraw his plea, Le's new counsel asked Le if the trial court had inquired at the change-of-plea hearing about Le's understanding of the rights he was giving up. Le responded, "No. I mean I basically was kind of just forced to sign the deal because my—my attorney she—she didn't sound too enthusiastic about going back to trial. My original plan was to—to retrial." Le stated he "really didn't understand" his plea form and felt pressured to sign it.

On cross-examination, Le acknowledged that he had signed and initialed the plea form. His attorney had spent about 10 minutes with him going over the form. Le stated that he did not remember if the trial court had asked him whether he had any questions about the plea agreement during the change-of-plea colloquy. Le knew that his attorney and the district attorney had had several discussions about resolving his case prior to the

4

date Le entered his no contest plea. During those discussions he and his counsel never spoke about his immigration status.

With respect to timing, Le testified "we were under pressure—that was what the deal was and I had to do it right then and there. I had to sign it right then and there or else there was no more deal." However, Le also stated that the day before he entered his plea, he asked his attorney for one more day to think about the deal. Le went back to the jail, thought about it, and, the next day, entered his no contest plea. Le acknowledged that he never asked for more time to consult with an immigration attorney.

Le's former attorney, the public defender, also testified.[3] Prior to the date of Le's change of plea, she had not personally asked Le whether he were a U.S. citizen. A paralegal from the public defender's office had done an initial intake interview with Le. The information about Le's immigration status was in the public defender's file and his attorney was aware of it. Prior to the date Le entered his no contest pleas, she had not advised him to consult with an immigration attorney. On that date, she advised him to speak to an immigration attorney once he was released from custody. She had conducted an "immigration investigation" about the charges prior to negotiating the plea agreement.

On the date Le entered his plea, his attorney advised him that the charges would make him "deportable." Le's attorney also believed that Le would not be "removable" because he had entered the country prior to 1995, but she could not recall whether she had specifically advised Le that he would not be removable. Le did not ask her any questions about his immigration status and did not appear confused during their discussion. She and Le had been in court one or two days prior to the change-of-plea hearing, and Le asked for and received more time to consider the plea offer. Le did not ask her for more time to consult with an immigration attorney after she told Le about the possible immigration consequences of his plea.

_____

[3] Le waived his attorney-client privilege to his discussions with his former attorney.

Le's former attorney went over the plea agreement form with him and explained each item to him, including each of the constitutional rights he would be waiving and the section on immigration consequences. She also had him read the form. She had met with Le at the jail a week before he entered his no contest plea to answer any questions he had. She testified that she did not have Le just sign the form without understanding it.

Le's former attorney remembered discussing with Le the status of the "hung jury" from his original trial that resulted in a mistrial due to jury deadlock. It was her understanding that, on the count that carried a potential life sentence, 11 jurors had voted for guilty and one for not guilty. She specifically discussed with Le the possibility of a life sentence if one of the jurors had made a different decision.

C. *Trial Court's Ruling on the Motion to Withdraw the Plea*

After hearing this evidence and considering argument from counsel, the trial court denied Le's motion to withdraw his plea. The trial court found that the evidence was clear that Le had been advised prior to entering his plea of the possible immigration consequences in writing and orally by his attorney and by the trial court. In addition, the trial court found Le's understanding of the immigration consequences "sufficient for purposes of denying his motion to withdraw his plea." Furthermore, the trial court found that the evidence was not clear and convincing that Le "would have made a different decision had he had additional time or had a better understanding" of the potential immigration consequences of the plea. The court stated "there is substantial material before the [c]ourt to show that the defendant and his attorney at the time spent careful consideration and time in interacting with the prosecutor's office regarding the potential resolution of the case after the trial disposition with a hung jury that was by division not favorable to the likelihood of a better outcome for him at a retrial and that the defendant made a voluntary, knowing and consc[ious] decision to accept the prosecutor's offer to avoid the potential consequences of a life sentence when his attorney was giving him her

6

best assessment of the strengths and benefits of moving forward to another trial versus accepting an offer that might have been made by the prosecutor's office."

The trial court concluded that Le had not carried his burden of proof that the court should grant his motion to withdraw his plea and, exercising its discretion, denied the motion.

After denying the motion and consistent with the plea agreement, the trial court sentenced Le to five years' imprisonment on counts 2 and 3, to run concurrently with each other. The trial court awarded 75 days of custody credits, imposed a number of fines and fees, and dismissed the remaining counts and allegations.

Le filed a timely notice of appeal and a request for a certificate of probable cause. The trial court granted the certificate.

## II. DISCUSSION

Le contends that the trial court abused its discretion by denying his motion to withdraw his plea. Le bases his argument on "the legislative intent and purposes behind section 1016.5," which in Le's view "imply certain factors pertinent to a section 1018 evaluation."

Le acknowledges that he was adequately advised under section 1016.5 by the trial court of the immigration consequences of his plea but argues that the record demonstrates that at the time of his plea he was not given sufficient time to consider its potential immigration consequences. Le attacks the trial court's finding that Le did not establish that he would have taken a different strategy had he been advised differently about the immigration consequences of his conviction. Although the plea agreement, on its face, was favorable for Le, he contends the trial court wrongly focused solely on the possibility of conviction of a crime carrying a life sentence and did not adequately consider the consequences of deportation. Le contends that the record evidence compels a finding of good cause under section 1018, and he should be permitted to withdraw his plea.

7

Alternatively, Le asserts that his defense counsel provided prejudicially ineffective assistance by failing to afford him a "meaningful opportunity" to consider the immigration consequences of the proposed plea agreement; by not giving him correct advice that his convictions would result in his being " 'removable' "; and by not attempting to negotiate a different plea bargain without the same immigration consequences. Moreover, Le contends there is a reasonable probability that Le would not have entered his plea but for his counsel's errors and maintains it would not have been irrational for him to risk additional prison time in order to avoid deportation.

For the reasons set forth below, we find no error in the trial court's denial of Le's motion and determine that Le did not suffer prejudice from any alleged ineffectiveness in the representation provided by his original defense counsel.

A. *Motion to Withdraw the No-Contest Plea*

A court may permit a guilty or no contest plea to be withdrawn "for good cause shown." (Pen. Code, § 1018; *People v. Archer* (2014) 230 Cal.App.4th 693, 702 (*Archer*).) " ' "Good cause" means mistake, ignorance, fraud, duress or any other factor that overcomes the exercise of free judgment and must be shown by clear and convincing evidence.' " (*People v. Dillard* (2017) 8 Cal.App.5th 657, 665.) "A plea may not be withdrawn simply because a defendant has changed his or her mind." (*Ibid*.)

An appellate court reviews the denial of a motion to withdraw a plea for an abuse of discretion. (*People v. Patterson* (2017) 2 Cal.5th 885, 894 (*Patterson*).) The trial court's order "is final unless the defendant can show a clear abuse of that discretion." (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.) "An abuse of discretion is found if the [trial] court exercises discretion in an arbitrary, capricious or patently absurd manner resulting in a manifest miscarriage of justice." (*People v. Shaw* (1998) 64 Cal.App.4th 492, 496.) " '[W]hen a trial court's decision rests on an error of law, that decision is an abuse of discretion.' " (*Patterson*, at p. 894.) The "reviewing court must adopt the trial court's factual findings if substantial evidence supports them." (*Fairbank*, at p. 1254.)

" ' " 'All questions of the weight and sufficiency of the evidence are addressed, in the first instance, to the trier of fact, in this case, the trial judge.' " ' " (*Archer*, *supra*, 230 Cal.App.4th at p. 702.)

Le ties his argument that his plea was unknowing to section 1016.5. In relevant part, this statute provides "(a) Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant:  [¶]  If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.  [¶]  (b) Upon request, the court shall allow the defendant additional time to consider the appropriateness of the plea in light of the advisement as described in this section." (§ 1016.5.)

Le does not dispute that, at the time he entered his no contest plea, he was aware that his plea could affect his immigration status. His attorney had told him that his plea would render him "deportable." Le also does not contest that he was provided the immigration advisement required by section 1016.5. Indeed, Le was given an advisement about adverse immigration consequences three times before entering his no contest plea: orally by the court, orally by his counsel, and in writing in the plea agreement. Le's argument that the trial court's decision rests on an error of law stems from the short period of time between when his attorney informed him about his possible deportation (and may also have told Le he was not removable) and when he entered his no contest plea.

We recognize that "[e]ven when a trial court has fulfilled its advisement duties, a defendant may show good cause to withdraw a guilty plea under section 1018 when, because of mistake or ignorance, the defendant has entered a guilty plea he or she would

9

not otherwise have entered." (*Patterson*, *supra*, 2 Cal.5th at p. 897.) The focus of a section 1018 inquiry is "what the defendant knew when entering the plea." (*Ibid.*)

Our review of the trial court's conclusion that Le had not carried his burden under section 1018 is deferential. As the California Supreme Court has observed, "as is typically the case under section 1018, a court asked to set aside a guilty plea based on mistake or ignorance of the deportation consequences is 'properly vested with discretion to grant or to deny the motion after considering all factors necessary to bring about a just result.' [Citation.] In exercising that discretion, a trial court may take into consideration the defendant's reaction to the section 1016.5 advisement—for example, whether the defendant acknowledged understanding the advisement and whether he or she expressed concerns about possible deportation consequences or sought additional time to consult with counsel. These considerations, along with any others that bear on the defendant's state of mind at the time of the plea, may assist courts in evaluating a later claim that the defendant would not have entered the plea had he or she understood the plea would render the defendant deportable." (*Patterson*, *supra*, 2 Cal.5th at pp. 898–899.)

The record supports the trial court's conclusion that Le did not carry his burden of showing by clear and convincing evidence that he would not have entered the plea had he been told earlier about any adverse immigration consequences. There is no evidence that during the change of plea hearing Le expressed concern about his potential deportation or removal. Even more significant, upon learning about the potential adverse immigration consequences of his plea, Le did not request more time to speak to an immigration attorney—or even more time to think about the offer. Section 1016.5 itself, the statutory basis for Le's argument, places the burden on the defendant to request further time. That statute provides, "(b) *Upon request*, the court shall allow the defendant additional time to consider the appropriateness of the plea in light of the advisement as described in this section." (§ 1016.5, subd. (b), italics added.)

10

Le made no such request and provides no explanation for this failure. Prior to the change-of-plea hearing on November 27, 2018, Le had already asked for—and received—another day to consider the offer, highlighting that he knew of the possibility of requesting more time. Although Le testified that he felt "forced" to sign the plea agreement, there was no evidence other than Le's statement that the plea offer would have been withdrawn if Le had asked for the opportunity to speak to an immigration attorney. Le presented no evidence supporting his statement he was coerced into signing the agreement. The trial court was not obligated to agree with Le's evidence (see *People v. Caruso* (1959) 174 Cal.App.2d 624, 636), some of which was clearly contradicted by the record from the change-of-plea hearing. Furthermore, the trial court is the exclusive judge of credibility. (*Ibid.*) For these reasons, we decide that substantial evidence supports the trial court's finding Le did not establish mistake or ignorance of the immigration consequences of his plea sufficient to carry his burden under section 1018.

Our deference to this finding is especially appropriate where the same judge who denied Le's motion to withdraw his plea had presided over his earlier trial, which resulted in a mistrial. The information against Le charged him with a violation of section 288.7, subdivision (b), which carries a term of imprisonment of 15 years to life. (§ 288.7, subd. (b).) Le was also charged with four counts of section 288(b)(1), each of which carries a potential prison term of 5, 8, or 10 years. (§ 288, subd. (b)(1).) The evidence before the court was that the jury had voted to convict on the section 288.7 charge by a vote of 11-1, suggesting that the 5-year sentence provided in the plea agreement was particularly advantageous for Le.

Le's former attorney testified that she had conducted an "immigration investigation" about potential charges prior to negotiating the plea agreement. Le introduced no evidence in the hearing on the motion to withdraw that a potentially more advantageous disposition was available in light of the charges against Le and the conduct of which he stood accused. While Le in his briefing contends it would not have been "

11

'irrational' " for him to risk additional prison time in order to avoid removal from the United States, he points to no evidence in the record that he would have done so. Le's failure to ask for more time to consider the immigration consequences after learning the convictions could make him deportable and his failure to ask any questions either of his attorney or the trial court on this topic support the trial court's finding that an earlier or more complete immigration discussion would not have affected Le's willingness to enter into the plea bargain.

For these reasons, we conclude that the trial court acted within its discretion in denying Le's motion to withdraw his no contest plea.

B. *Ineffective Assistance of Counsel*

Le argues that he entered his no contest plea as a result of defense counsel's ineffective assistance. Specifically, Le contends that his defense counsel provided prejudicially ineffective assistance by failing to give him more time to consider the potential immigration consequences of his plea, by not providing accurate legal advice about whether his convictions would result in his removal from the country, and by not attempting to negotiate a different plea bargain with more favorable immigration consequences.

"The test for ineffective assistance of counsel is a demanding one." (*People v. Acosta* (2018) 28 Cal.App.5th 701, 706.) The claim requires a showing that defense counsel's performance fell below an objective standard of reasonableness and that the defendant was prejudiced by the deficient performance. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) The defendant bears the burden of demonstrating deficient performance by a preponderance of the evidence. (*In re Thomas* (2006) 37 Cal.4th 1249, 1257.) To establish prejudice based on incompetent advice regarding whether to plead guilty, the defendant must show "a reasonable probability that, but for counsel's incompetence, [he or she] would not have pleaded guilty and would have insisted on

12

proceeding to trial." (*In re Alvernaz* (1992) 2 Cal.4th 924, 934; see also *Lafler v. Cooper* (2012) 566 U.S. 156, 163.)

We do not consider whether Le's counsel provided deficient performance, because we conclude on this record he cannot show prejudice. The trial court found that Le had not carried his burden of showing that he would have gone to trial and faced a potential life sentence instead of accepting a five-year offer had he been more fully informed of the immigration consequences of his conviction. While Le in this court attacks that conclusion—contending the trial court paid insufficient attention to the timing of when Le learned of the potential serious immigration consequences—Le has not persuaded us that but for defense counsel's actions, he would not have entered into the plea agreement.

For these reasons, we reject Le's claim that he was deprived of his right to the effective assistance of counsel.

### III. DISPOSITION

The judgment is affirmed.

_____
                       Danner, J.

WE CONCUR:

_____
Greenwood, P.J.

_____
Grover, J.

**H047423**
*People v. Le*