Filed 6/28/23  P. v. Franco CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RODOLFO FERNANDEZ FRANCO,<br><br>    Defendant and Appellant. | 2d Crim. No. B322552<br>(Super. Ct. No. 2021011740)<br>(Ventura County) |

Rodolfo Fernandez Franco appeals from the judgment entered after a jury had convicted him of five sexual offenses committed against three victims.  Counts 1 through 3 involved the same victim – Nicole E.  Count 1 charged forcible rape (Pen. Code, § 261, subd. (a)(2));[1] count 2 charged forcible oral copulation (former § 288a, subd. (c)(2)(A), now § 288, subd. (c)(2)(A)); and count 3 charged forcible sodomy.  (§ 286, subd.

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

(c)(2)(A).)  Count 4 charged forcible oral copulation upon J.A., and count 5 charged assault with intent to commit rape upon Shirley G.  As to counts 1 through 4, the jury found true an allegation that in the present case appellant was convicted of committing a sexual offense against more than one victim.  (§ 667.61, subd. (e)(4).)  The trial court sentenced appellant to prison for a determinate term of four years on count 5 plus a consecutive indeterminate term of 60 years to life on counts 1 through 4.

In his 103-page opening brief, appellant argues: (1) the trial court erred in admitting Shirley G.'s statements to the police under the spontaneous statement exception to the hearsay rule; (2) the admission of Shirley G.'s statements violated his constitutional right to confront witnesses against him; (3) as to his conviction of the forcible sodomy of Nicole E., he was denied his constitutional right to effective assistance of counsel because his trial counsel did not request a jury instruction on the defense of accident or misfortune; (4) the court erroneously instructed the jury that, if the defendant makes a mistake of fact as to the victim's consent to sexual relations, the mistake must be reasonable; and (5) a $2,300 fine must be stricken because he "lacked the ability to pay" it.  We affirm.

*Facts As to Nicole E. and Shirley G.*

Although appellant was convicted of offenses committed against three victims, the issues on appeal concern only two victims – Nicole E. and Shirley G.  We summarize the relevant facts as to these two victims.  We omit a summary of facts as to the third victim, J.A.

2

<u>Nicole E.</u>

In February 2003 Nicole E. gave appellant a ride in her vehicle. She had never seen him before. When Nicole E. came to a stop, appellant yanked the keys out of the ignition and started choking her. He exposed his erect penis and forced her to orally copulate it.

Appellant forced Nicole E. into the vehicle's back seat. He ripped her shirt open and sucked her right breast. He pulled off her pants so she was "naked from the waist down."

Appellant put his erect penis into Nicole E.'s anus. Nicole E. screamed: "What are you doing? You are in the wrong hole." She "was in so much pain."

Appellant removed his penis from Nicole E.'s anus and put it inside her vagina. He had vaginal sex with her until he ejaculated.

Nicole E. put her pants on and returned to the driver's seat. She screamed at appellant, "[G]et out of my car, get out of my car." She "gunned" the engine and "took off." As she was driving away, appellant "fell out [of] the car."

It was not until 2021 that appellant was arrested for the offenses committed against Nicole E. He was identified as the perpetrator through DNA evidence retrieved during the investigation of the sexual assault committed against Shirley G.

<u>Shirley G.</u>

Shirley G. was unavailable as a witness. Over appellant's objection, the trial court admitted her recorded call to a police dispatcher and recorded conversation with a police officer.

At approximately 6:00 a.m. on December 20, 2020, Shirley G. called the police from a call box in front of the police station. Shirley G. said she needed to talk to an officer "[a]bout somebody

3

almost killing me and sexually harassing me." The incident occurred "right here by the Episcopal church . . . on this street and the next corner." Shirley G. "chased . . . off" the suspect. The police dispatcher said: "All right. Stay there, we'll have an officer talk to you."

When Shirley G. spoke to the police dispatcher, Officer Alexis Arellano was on patrol. In response to the dispatcher's call, he drove to the police station and contacted Shirley G. at approximately 6:00 a.m. They had the following brief conversation:

"AA [Officer Alexis Arellano]: Good morning, ma'am. How are you?
"SG [Shirley G.]: I'm doing okay, now.
"AA: You can stay seated. What's goin' on? How can I help you today?
"SG: Um, I was almost, uh, raped and the guy choked me out. He was sexually harassing me.
"AA: Okay.
"SG: And then he grabbed me by my throat.
"AA: Where, where is this at?
"SG: Right here by the church.
". . . .
"AA: Do you know this person?
"SG: No.
"AA: Okay. So, you were asleep to the rear of the church?
"SG: No. I was asleep under the cross.
"AA: Okay.
"SG: And I was on top of, um, this blanket that Melissa from the church had gave me. . . .
"AA: Okay.
"SG: When this guy out of nowheres approached me and, uh, then was talking about oh, it's cold. Can I lay down

right here?  After I told him no, I don't wanna be bothered. I don't want nobody around me.

"....

"AA: Okay. . . .  [W]hat time was this all at, ma'am?

"SG: Just like within 5-10 minutes.

"AA: So, 5-10 minutes ago?

"SG: Yeah. Till you came out.

"AA: Okay.

"SG: I chased him down the alley. He went to the right and then he went to the quick left."

Officer Arellano testified that photographs of Shirley G. depicted "the injuries which she indicated occurred as a result of the incident."  He did not describe the injuries.

<u>Appellant's Testimony</u>

Appellant testified that, during the early morning hours of December 20, 2020, he "end[ed] up l[]ying next to Shirley G.," a homeless woman.  Appellant continued: "I went inside in the blankets with her.  And I just wanted to stay warm and go to sleep.  And I just woke up and then at that moment she just told me to leave."  They "got into an argument," after which appellant "got up and left."  He did not sexually assault her.  "I was l[]ying next to her -- with her, holding her, cuddling her and that's about it."

As to Nicole E., appellant insisted that she had consented to vaginal intercourse.  His penis may have touched her anus, but did not penetrate it.  Appellant testified: "[B]efore I went inside her [vagina], I might have touched that part [her anus].  But she told me not there.  So I went back into her vagina and proceeded to have sex with her."  Appellant denied forcing Nicole E. to perform oral sex.

5

*The Trial Court Did Not Abuse Its Discretion in Admitting*
*Shirley G.'s Statements Under Evidence Code Section 1240*

Appellant contends the trial court erroneously admitted Shirley G.'s statements to the police. The statements were admitted under Evidence Code section 1240 (section 1240), which creates an exception to the hearsay rule for spontaneous statements. Except as otherwise provided by law, the hearsay rule excludes "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200.)

Section 1240 provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception." Appellant claims the People failed to carry their burden of "introduc[ing] . . . facts establishing the foundational requirement that Shirley G. made [her] statements 'under the stress of excitement' as required by Evidence Code section 1240, subdivision (b)."

"The admissibility requirements for such out-of-court statements are well established. "'(1) [T]here must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it." [Citations.]' [Citation.] A statement meeting these requirements is 'considered

6

trustworthy, and admissible at trial despite its hearsay character, because "in the stress of nervous excitement, the reflective faculties may be stilled and the utterance may become the instinctive and uninhibited expression of the speaker's actual impressions and belief." . . .'" *People v. Merriman* (2014) 60 Cal.4th 1, 64 (*Merriman*).)

"Whether an out-of-court statement meets the statutory requirements for admission as a spontaneous statement is generally a question of fact for the trial court, the determination of which involves an exercise of the court's discretion. [Citation.] We will uphold the trial court's determination of facts when they are supported by substantial evidence and review for abuse of discretion its decision to admit evidence under the spontaneous statement exception." (*Merriman, supra*, 60 Cal. 4th at p. 65.) "[D]iscretion is abused only when the court exceeds the bounds of reason, all circumstances being considered." (*People v. Beames* (2007) 40 Cal.4th 907, 920.)

"We conclude the court acted well within its discretion in finding [Shirley G.'s] statements . . . met the requirements of the spontaneous statement exception. Because [her] statement[s] . . . described a physical assault by [appellant], [they] clearly satisfied the requirement that the statement[s] in question relate to an occurrence that was startling enough to cause nervous excitement." (*Merriman, supra*, 60 Cal. 4th at p. 66.) Shirley G. told the police dispatcher that her assailant had "almost kill[ed]" her. She told Officer Arellano that her assailant had "almost . . . raped" her and had "choked [her] out." He "grabbed [her] by [the] throat."

"The record also amply supports the trial court's [implied] finding that [Shirley G.] spoke to [the police dispatcher and

7

Officer Arellano] while she was under the 'stress of excitement' and before there was time to contrive or misrepresent what had happened." (*Merriman*, *supra*, 60 Cal.4th at p. 66.)  Shirley G. told Officer Arellano that the assault had occurred only five to ten minutes earlier.  The officer's questioning of Shirley G. was "simple and nonsuggestive." (*People v. Poggi* (1988) 45 Cal.3d 306, 320.)  The questioning did not "deprive [Shirley G.'s] response of spontaneity by effectively placing words into [her] mouth or . . . causing [her] to reflect and recollect [herself] before [s]he answer[ed]." (*Ibid*.)

Appellant maintains "the prosecutor did not introduce any evidence showing that Shirley G. *actually suffered* from the stress of excitement when she made the statements to the [police dispatcher] and the officer." (Italics added.)  But based on Shirley G.'s description of the assault and the short time interval between the assault and her statements to the police, the trial court reasonably inferred that she was still under the stress of excitement.  When an appellate court reviews a trial court's decision for abuse of discretion, it "draw[s] all reasonable inferences in support of the court's ruling." (*Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734, 749.)  The same standard applies when an appellate court reviews a finding for substantial evidence. (*People v. Grant* (2020) 57 Cal.App.5th 323, 330 ["'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence'"].)

In considering whether the requirements of section 1240 were met, "we cannot second-guess the trial court's assessment of the evidence in determining [the declarant's] state of mind." (*People v. Liggins* (2020) 53 Cal.App.5th 55, 64.)  In *People v. Lynch* (2010) 50 Cal.4th 693, 754, states that various factors

8

"collectively appear to demonstrate that [the declarant's] mental state while describing the attack was thoughtful and reflective."[2] That is not the factual posture of the present case. Shirley G.'s statements were not like the victim's statement in *Lynch, supra,* that were thoughtful and reflective, made some two hours after the offense. (See also p.10, *post*.)

*The Admission of Shirley G.'s Statements Did*
*Not Violate Appellant's Right of Confrontation*

Appellant claims the admission of Shirley G.'s out-of-court statements violated his Sixth Amendment right to confront witnesses against him. But the confrontation clause does not apply to nontestimonial statements, and Shirley G.'s statements were nontestimonial. "If a statement is not testimonial, "'it does not implicate the confrontation clause, and the issue is simply whether the statement is admissible under state law as an exception to the hearsay rule.'"'" (*People v. Almeda* (2018) 19 Cal.App.5th 346, 362.)

"'Statements are nontestimonial' . . . 'when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.'" (*People v. Cage* (2007) 40 Cal.4th 965, 982.)

---

[2] *Lynch* was overruled on another ground in *People v. McKinnon* (2011) 52 Cal.4th 610, 637-638.

9

"On appeal, we independently review whether a statement was testimonial so as to implicate the constitutional right of confrontation. [Citation.] We evaluate the primary purpose for which the statement was given and taken under an objective standard, 'considering all the circumstances that might reasonably bear on the intent of the participants in the conversation.'" (*People v. Nelson* (2010) 190 Cal.App.4th 1453, 1466.)

The evidence shows that Shirley G.'s statements to the police were nontestimonial. "Officer [Arellano], responding to an emergency call, encountered an agitated victim of a serious assault, who described [appellant's] attack on [her] . . . . The statements provided the police with information necessary for them to assess and deal with the situation, including taking steps to evaluate potential threats to others by the perpetrator[], and to apprehend the perpetrator[]. The statements were not made primarily for the purpose of producing evidence for a later trial . . . ." (*People v. Romero* (2008) 44 Cal.4th 386, 422.)

*Appellant Was Not Denied His Right*
*To Effective Assistance of Counsel*

As to the charge of forcible sodomy upon Nicole E., appellant contends he was denied effective assistance of counsel because his counsel did not request a jury instruction "on the defense of accident or misfortune." (Bold and capitalization omitted.) "The accident defense amounts to a claim that the defendant acted without forming the mental state necessary to make his or her actions a crime." (*People v. Lara* (1996) 44 Cal.App.4th 102, 110.)

The accident defense is set forth in CALCRIM No. 3404: "The defendant is not guilty of *<insert crime[s]>* if (he/she) acted

10

. . . without the intent required for that crime, but acted instead accidentally. You may not find the defendant guilty of <*insert crime[s]*> unless you are convinced beyond a reasonable doubt that (he/she) acted with the required intent."

Appellant claims he was entitled to an instruction on the accident defense because the jury could have found that he had intended to put his penis into Nicole E.'s vagina, but had accidentally put it into her anus. Appellant asserts, "[F]or purposes of the sodomy statute, the requisite general intent would consist of the intent to commit the act of anal penetration." Therefore, he would not be guilty of sodomy if he had accidentally inserted his penis into Nicole E.'s anus. "If a defendant intends to commit the act of vaginal intercourse, but accidentally commits an act of anal intercourse instead, the defense of accident applies."

Appellant's argument is absurd. He is saying that if a man intends to rape a woman but during the attempted rape he accidentally puts his penis into the woman's anus and does not penetrate her vagina, he cannot be convicted of rape or sodomy. We cannot fault defense counsel for not asking the court to instruct on an absurd legal theory.

As appellant recognizes, sodomy is a general intent crime. (*People v. Davis* (1995) 10 Cal.4th 463, 519.) "'A crime is characterized as a "general intent" crime when the required mental state entails only an intent to do the act that causes the harm; a crime is characterized as a "specific intent" crime when the required mental state entails an intent to cause the resulting harm.'" (*People v. Atkins* (2001) 25 Cal.4th 76, 86.) If appellant had intended to put his penis into Nicole E.'s vagina but had accidentally inserted it into her anus, he would have had the

11

requisite general intent for sodomy, i.e., he would have "intend[ed] to do the act that causes the harm." (*Ibid.*) Appellant's intended act would have been the forcible penetration of a body orifice with his penis. His poor aim does not shield him from liability for sodomy. The crime does not require a specific intent to penetrate the victim's anus.

### Court Did Not Err in Instructing That
### Mistake of Fact Must Be Reasonable

The trial court instructed the jury that appellant is not guilty of sodomy or rape if he actually and reasonably believed that the acts were consensual. Appellant maintains the instructions were erroneous insofar as they required a *reasonable* belief on his part. But he recognizes that, pursuant to the doctrine of stare decisis, we are bound by the California Supreme Court's decision that a mistaken belief in consent must be reasonable. (*People v. Maury* (2003) 30 Cal.4th 342, 424; *People v. Williams* (1992) 4 Cal.4th 354, 360-361.) Appellant notes that "although this Court is bound, it is not gagged." We see no reason to quarrel with this well-established rule.

### Appellant Forfeited Claim that the Section 290.3
### Fine Must Be Stricken Because He Is Unable to Pay It

Pursuant to section 290.3, the trial court imposed a fine of $2,300. Section 290.3, subdivision (a) provides that the fine shall be imposed "unless the court determines that the defendant does not have the ability to pay the fine." Appellant claims that the fine must be stricken because he "lacked the ability to pay" it.

The claim is forfeited because in the trial court appellant did not object that he was unable to pay the fine. (*People v. Acosta* (2018) 28 Cal.App.5th 701, 705-706.) Appellant concedes

12

that he "did not raise this precise point below." "[T]rial counsel asked only that the fine . . . be reduced from $9,200 to $2,300."

Moreover, appellant has failed to show that he is unable to pay the $2,300 fine. ""'Ability to pay does not necessarily require existing employment or cash on hand." [Citation.] "[I]n determining whether a defendant has the ability to pay a . . . fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future." [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody . . . .'" (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076 (*Aviles*).) "'Prison wages range from $12 to $56 per month, depending on the prisoner's skill level.'" (*People v. Lowery* (2020) 43 Cal.App.5th 1046, 1060 (*Lowery*).)

Appellant's prison sentence includes a consecutive indeterminate term of 60 years to life. "We can infer [he] has the ability to pay the fines and fees imposed upon him from probable future . . . prison wages." (*Aviles*, *supra*, 39 Cal.App.5th at p. 1076.) "Nothing in this record suggests [he] might be unable to work, or that [he] might be ineligible for prison work assignments." (*Lowery*, *supra*, 43 Cal.App.5th at p. 1060.)

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                                    YEGAN, J.

We concur:


        GILBERT, P. J.                        CODY, J.


13

Anthony J. Sabo, Judge

Superior Court County of Ventura

_____

George L. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, Marc A. Kohm, Deputy Attorney General, for Plaintiff and Respondent.